**SEALED**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> Nyika Ranada GOMEZ, <br><br> Defendant. | Case No.: '20 MJ5356 <br><br> COMPLAINT FOR VIOLATION OF <br><br> Title 18 U.S.C., Section 1343 – Wire Fraud; Title 18 U.S.C., Section 1028A – Aggravated Identity Theft; Title 18, U.S.C., Secs. 981(a)(1)(C) and 982, and Title 28, U.S.C., Sec. 2461(c) – Forfeiture |

The undersigned complainant being duly sworn states:

### Counts 1 through 9

Execution of Scheme to Defraud by Wire Communications

(18 U.S.C. § 1343)

1. Beginning at least as early as June 16, 2020, and continuing up through at least December 2, 2020, in the Southern District of California and elsewhere, Defendant NYIKA RANADA GOMEZ, with the intent to defraud, knowingly participated in, devised, and intended to devise a material scheme and plan to defraud and to obtain money and property by materially false and fraudulent pretenses, representations, and promises; that is, the "Pandemic Unemployment Insurance Scheme."

2. With the Pandemic Unemployment Insurance Scheme, Defendant NYIKA RANADA GOMEZ obtained personal identifying information (PII) such as names, dates of birth, and social security numbers, from prisoners and out-of-state residents whose PII was stolen, and passed herself off as those people to collect unemployment insurance (UI) under the expanded UI provisions of the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The CARES act provided for new types of unemployment benefits to cover people who would not qualify for regular unemployment during the COVID-19 pandemic,

including the Pandemic Unemployment Assistance (PUA) program which provides UI for independent contractors and part-time workers, and the Pandemic Emergency Unemployment Compensation (PEUC) program which extends the regular UI by up to thirteen weeks. The UI program is administered for the United States Department of Labor (DOL) by state employment offices, such as the Employment Development Department (EDD) in California and the Arizona Department of Economic Security (AZDES) in Arizona. Both the EDD and AZDES require individuals to apply for UI benefits through their online portal.

3. For the purpose of executing and attempting to execute the pandemic unemployment insurance scheme, on or about the following dates, within the Southern District of California and elsewhere, Defendant NYIKA RANADA GOMEZ, as specified for each count listed below, knowingly caused to be transmitted by wire communication in interstate commerce the following signals and sounds, in the form of UI PUA benefit claims to the EDD and/or AZDEZ internet sites, in the following approximate amounts, as specified:

| Count | Approx. Date of Claim | UI Claimant/ Purported Occupation | Date Claimed Employment Terminated | Approx. Amount Of Claim | Result of Claim | State Claim Filed |
|---|---|---|---|---|---|---|
| 1 | 6/16/2020 | WB/ Construction | 2/28/20 | $19,560 | Rejected | CA |
| 2 | 6/8/2020 | BT/ Janitorial Supervisor | 3/9/2020 | $19,560 | Rejected | CA |
| 3 | 6/23/2020 | KH/ Model Photographer | 3/13/2020 | $19,560 | Approved | CA |
| 4 | 6/30/2020 | MT/ Maintenance | 3/11/2020 | $19,560 | Approved | AZ |
| 5 | 7/1/2020 | MC/ Independent Contractor | 3/11/2020 | $19,560 | Approved | AZ |
| 6 | 7/2/2020 | BT/ | 3/20/2020 | $19,560 | Approved | AZ |

| | | | Independent Contractor | | | | |

4. For the purpose of executing and attempting to execute the fraudulent pandemic unemployment insurance scheme, on or about the following dates, within the Southern District of California and elsewhere, defendant NYIKA GOMEZ, as specified for each count listed below, knowingly caused to be transmitted by wire communication in interstate commerce the following signals and sounds in the form of UI PUA benefit claims falsely representing that each of the following claimants resided at her residence, and requesting that UI PUA benefits be sent to that residence:

| Count | Approx. Date of Claim | UI Claimant/ Purported Occupation | Date Claimed Employed | Approx. Amount of Claim | Result of Claim | State Claim Filed |
|---|---|---|---|---|---|---|
| 7 | 8/31/2020 | RA/ Landscape Contractor | 5/19/2020 | $19560 | Rejected | CA |
| 8 | 8/31/2020 | KN/ Electrical Contractor | 8/31/2020. | $19,560 | Rejected | CA |
| 9 | 8/31/2020 | BW/ Hairstylist | 4/21/2020. | $19,560 | Rejected | CA |

All in violation of Title 18, United States Code, Section 1343.

### Counts 10 through 12
### 18 U.S.C. § 1028A
### (Aggravated Identity Theft)

5. On or about the dates set forth below, in the Southern District of California and elsewhere, during and in relation to a felony violation of 18 U.S.C. § 1343 (wire fraud), defendant NYIKA RANADA GOMEZ knowingly transferred, possessed, and used, without legal authority, the means of identification, that is, the name, date of birth, and social security number, of the following specified individuals, knowing that the means of identification belonged to another actual person:

3

| Count | Approx. Date | Actual Person |
|---|---|---|
| 10 | 6/16/20 | W.B |
| 11 | 7/2/2020 | B.T. |
| 12 | 7/1/2020 | M.C. |

All in violation of Title 18, United States Code, Section 1028A.

## FORFEITURE ALLEGATIONS

6. Upon conviction of one or more of the offenses alleged in Counts 1 – 9, of this Complaint and pursuant to Title 18, United States Code, Section 981 (a) (1) (C), Title 28, United States Code, Section 2461(c), defendant NYIKA RANADA GOMEZ shall forfeit to the United States any property, real and personal, which constitutes and is derived from proceeds traceable to the offenses, and any property traceable to such property.

7. If any of the above-described forfeited property, as a result of any act or omission of defendant GOMEZ, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853 (p), made applicable herein by Title 18, United States Code, Section 982 (b), to seek forfeiture of any other property of the defendant up to the value of the property described above subject to forfeiture.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

The complainant states that this complaint is based on the attached Statement of Facts incorporated herein by reference.

Special Agent Roger Passero
U.S. Department of Labor, Office of the Inspector General

4

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 14th day of December 2020.

HON. KAREN S. CRAWFORD
U.S. MAGISTRATE JUDGE

# STATEMENT OF FACTS FOR FINDING PROBABLE CAUSE

I, Special Agent Roger Passero, declare under penalty of perjury that the following is true and correct:

### A. Background: Pandemic Unemployment Insurance and the CARES act

Based on my training, experience, and over the course of this investigation I have learned the following is true.

On or about March 17, 2020, California and most other states declared a state of emergency relating to the COVID-19 pandemic, which resulted in massive unemployment. On March 27, 2020, Congress Passed and the President signed the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The CARES Act included an economic relief package in excess of $2 trillion designed to relieve the public health and economic crises related to the pandemic.

The Social Security Act of 1935 initiated the unemployment insurance (UI) system, which is designed to provide temporary income to individuals out of work due to no fault of their own. The UI system is administered for the federal government by state employment offices which administer unemployment benefits programs under guidelines established by federal law.

In California, the Employment Development Department (EDD) administers the UI system on behalf of the United States Department of Labor (DOL), which provides the principal funding for the program. In the State of Arizona, the agency responsible for program oversight is the Arizona Department of Economic Security (AZDES). Both EDD and AZDES require all UI claims to be filed online.

The CARES Act provides for three new types of unemployment benefits: (i) The Pandemic Unemployment Assistance (PUA) program is a separate benefit program designed to cover many people who do not qualify for regular unemployment during the COVID-19 pandemic. This includes self-employed individuals, independent contractors, and part-time workers affected by COVID-19; (ii) the Pandemic Emergency Unemployment Compensation (PEUC) program is an extension of regular unemployment benefits that offer unemployment benefits up to thirteen weeks beyond the number of weeks available from regular unemployment. The CARES Act made these PEUC

1

benefits available to the unemployed between March 29, 2020, and December 26, 2020; (iii) The Federal Pandemic Unemployment Compensation (FPUC) program provides an extra $600 per week in addition to regular or PUA unemployment payments between March 29, 2020 and July 25, 2020. The FPUC is available for everyone on regular unemployment or PUA, except those on training benefits.[1]

In order to qualify for unemployment insurance, an applicant must complete an online application with the applicant's name, date of birth, social security number, and other personal information. The applicant can then file for benefits by certifying online that he/she is unemployed and eligible for benefits. To be eligible, an applicant must have been employed in a qualifying position immediately prior to the period being claimed. Claims are commonly paid out through electronic debit cards that are sent to the claimant through U.S. Mail. Most states, including California and Arizona, do not issue paper checks.

No state allows an incarcerated inmate to file or collect UI benefits. An unemployed individual is eligible to receive unemployment compensation benefits only if he or she was able to work and available for work during the time benefits are claimed.

### B. Nyika GOMEZ and BT

Over the course of this investigation, I know that Nyika Ranada GOMEZ is an adult resident of San Diego. According to EDD records, GOMEZ began working as an EDD contract employee on approximately July 27, 2020, processing UI claims as a Call Center Agent. In that capacity she received training in the rules and regulations governing PUA UI claims and assisted UI claimants in California submit such claims. She also received memoranda regarding EDD policies and procedures in advance of that information being made available to the public. EDD engaged such contractors because it was unable to address the flood of UI claims caused by the COVID-19 Pandemic with its own staff.

According to records maintained by the California Department of Corrections and Rehabilitation (CDCR), which I have reviewed, at all times relevant to this matter, BT has been an inmate at California State Prison Sacramento, which is part of the CDCR. I have listened to recorded jail calls and reviewed correspondence between GOMEZ and BT indicating that they were in

---

[1] FPUC is not available for those receiving benefits under state "additional benefits" programs, which extend the duration of benefits during high unemployment to those in approved training programs who have exhausted benefits for a variety of reasons.

2

a relationship at all times relevant to this matter.

### C. CDCR investigators monitoring recorded jail calls alert agents to a scheme by GOMEZ and BT to use inmate identities for fraudulent UI claims

I have reviewed CDCR reports indicating that in late summer, 2020, CDCR investigators learned of consensually-recorded phone conversations in which BT provided GOMEZ with personal identifying information (PII) from other inmates for the purpose of submitting fraudulent UI claims. Investigators also noticed that GOMEZ was sending money to several inmates housed with BT through J-Pay, a money transfer system for prison inmates.

#### 1. Agents discover several UI claims originating from an IP address connected to GOMEZ.

According to the reports I have reviewed and the conversations I have had with CDCR and EDD investigators, CDCR investigators soon identified GOMEZ's internet protocol (IP) address from her own UI PUA claim (i.e. the one using GOMEZ's own PII). EDD investigators cross-referenced GOMEZ's IP address[2] with the IP addresses that submitted claims for several of the inmates who received money from GOMEZ through J-Pay and noticed that the IP addresses are identical. Further review of BT's calls with GOMEZ revealed that the same PII that BT provided to GOMEZ was used for UI claims throughout California and Arizona. In some instances, the same person submitted UI claims in multiple states for the same time period. All of the claims falsely cite COVID-19 as the reason for unemployment. In fact, these prison inmates were not unemployed because of COVID-19, they were unemployed because they were in prison and could not legally work. GOMEZ also used her knowledge of EDD policies that she acquired as an EDD contract employee to back-date the claims to a time in February or March, 2020, which would allow a claim for the maximum allowed benefit: $19,650. Table 1, below sets forth the UI claims by

---

[2] A database indicated that GOMEZ IP address is owned by Charter Communications Inc. (Charter), an internet service provider. An administrative subpoena to Charter showed that GOMEZ's IP address is associated with GOMEZ's residence. Agents visited GOMEZ's residence and noted that the wireless network associated with her residence is locked to the public, foreclosing the possibility that a neighbor was using GOMEZ's IP address without her permission to submit UI claims.

3

CDCR inmates in Sacramento which based on EDD records were filed using GOMEZ's IP address:

| State Claim Filed | Claimant | Claimed Occupation | Date Work Affected | Date Claim Filed | Status and Amount of Claim |
|---|---|---|---|---|---|
| CA | WB | Construction | 2/28/20 | 6/16/20 | Rejected $19,560 |
| CA | BT | Janitorial Supervisor | 3/09/20 | 6/08/20 | Rejected $19,560 |
| CA | KH | Model/Photographer | 3/13/20 | 6/23/20 | Approved $19,560[3] |
| AZ | MT | Maintenance | 3/16/20 | 6/30/20 | Approved $19,560 |
| AZ | MC | Independent Contractor | 3/11/20 | 7/01/20 | Approved $19,560 |
| AZ | BT2 | Independent Contractor | 3/20/20 | 7/02/20 | Approved $19,560 |

CDCR records also reflect JPAY payments from GOMEZ to WB, KH, BT, and 8 other inmates in 2020.

Agents also searched EDD and AZDEZ databases for UI claims using GOMEZ's residence as the claimant's address, and the location where the payments should be mailed. I have reviewed reports and discussed that search with other agents. Table 2 below sets forth six EDD claims listing the GOMEZ's residence as the claimant's residential and mailing address. Additionally, every claim except WB's claim lists GOMEZ's residence as the location of the claimant's place of business. RA, KN, and BW are not California inmates or residents. They are Florida residents with no ties to California and never worked in California. Agents have interviewed each of these individuals and all stated that they never filed a UI claim and never consented to someone else filing a UI claim on their behalf. Based on a call in which GOMEZ discusses purchasing PII from a vendor in Los Angeles for a thousand dollars, agents believe that GOMEZ acquired their identifying information from a vendor specifically for this scheme. Each of these claims was rejected by EDD for lack of proper supporting documentation accompanying the claim. Agents found documents with RA's PII and EDD correspondence for BW in GOMEZ residence.

//

//

---

[3] KH's claim only paid out $5,960 before EDD stopped payment on the claim.

4

| State Claim Filed | Claimant | Claimant Occupation | Date Work Affected | Date Claim Filed | Amount of Claim | Actual Residence |
|---|---|---|---|---|---|---|
| CA | BT | Janitorial Service Supervisor | 3/09/20 | 6/08/20 | $19,560 | Incarcerated |
| CA | WB | Construction of New Developments | 2/28/20 | 6/16/20 | $19,560 | Incarcerated |
| CA | RA | Landscape Contractor | 5/19/20 | 8/31/20 | $19,560 | Florida |
| CA | KN | Electrical Contractor | 4/18/20 | 8/31/20 | $19,560 | Florida |
| CA | BW | Hairstylist | 4/21/20 | 8/31/20 | $19,560 | Florida |

### 2. **GOMEZ and BT discuss fraudulent UI claims over recorded phone calls.**

Each of BT's calls with GOMEZ began with an automated announcement: "this call and or telephone number will be monitored and recorded." Agents identify GOMEZ on these calls in at least three ways. First, on each call, GOMEZ uses the same number that she listed on her own EDD employment application as her number. Second, during a call on August 29, 2020, agents could hear GOMEZ identify herself in the background while on another call from a different phone saying: "thank you for calling the Employment Development Department, this is Nyika." Third, agents spoke with GOMEZ face-to-face during a search of her house and recognize GOMEZ's voice on these calls based on that encounter.

I have listened to each of these calls and have prepared the following excerpts of material parts of the calls. My interpretation of coded language is set forth in brackets and is based on my training, my experience with other investigations, my knowledge of this investigation, and my conversations with other agents, such as CDCR investigators, who specialize in decoding prison communications.

On September 3, 2020, BT called GOMEZ on a recorded line and, using coded language, they discussed the status of pending UI claims:

> I've been waiting on it [unemployment benefit claims to be approved and paid out] . . . Just [be] patient, It's coming you know. A lot of people

are coming through, not everybody, it changes though, its slowly coming through. They keep changing some of the, um, you know it can uh partial paid, [approved claims and partial payment] so when it goes into that, you got to wait for it to come through. I'm like come through please- hurry up.

On a follow-up call the same day, BT asked GOMEZ about the status of Arizona unemployment claims:

| | |
|---|---|
| BT: | What's up with the homies in AZ [UI claims made to the state of Arizona]? |
| GOMEZ: | I don't know. He should be calling soon. [the Arizona claims should pay soon]. |
| . . . | |
| BT: | So it's looking promising then. |
| GOMEZ: | possibly, (unintelligible) sleep. |
| BT: | My boy said his cousin and him up and everything Gucci [making money] for them and that was around the same time as our little homie, you feel me? [An acquaintance of BT' successfully submitted UI claims in Arizona at about the same time.] |
| GOMEZ: | yeah |

BT called GOMEZ again on September 8, 2020 and they discussed whether GOMEZ could use a specific address on West 88th Street in Los Angeles to receive UI benefit cards. Agents believe this is a reference to inmate BT2 (listed in Table 1, above) who filed a claim with EDD from GOMEZ's IP address and listing a mailing address on West 88th Street in Los Angeles. Agents later found the debit card connected to this claim in GOMEZ's purse:

| | |
|---|---|
| GOMEZ: | Do you know somebody that stays on W. 88th [Street]? I was just trying to figure something out. You have that one Indian guy. [Inquiring about the status of a claim using an address on W. 88th Street in Los Angeles]. |
| BT: | Which one? |
| GOMEZ: | The one Indian guy. I think his name starts with a T.[4] |

---

[4] BT2 is ethnically Indian and GOMEZ correctly identifies the first letter of BT2's last name. Based on these facts I believe that GOMEZ knows that BT2 is a real person for purposes of Count 11.

| | | |
|---|---|---|
| BT: | Up in here? [in California State Prison, Sacramento]. | |
| GOMEZ: | I was trying to figure something out. It was something that was applied. [describing a pending UI application.] | |
| BT: | In Cali? [UI claims filed in California] | |
| GOMEZ: | Yes, addressed to W. 88th [UI claim using an address on W. 88th Street] | |
| BT: | Is that what your people in AZ are talking about? | |
| GOMEZ: | No, my people in Cali are talking about. | |
| BT: | No, I was just trying to verify something. If there was anything available in Cali. [Is there an address I can use in CA for UI claims]. | |
| BT: | I already told you. That's why they did the AZ thing. [Filed UI claims in Arizona] You don't remember what I said. | |
| GOMEZ: | No. | |
| BT: | When I gave you shit. [provided GOMEZ with names and identifying information] Don't do that in Cali. Do that in AZ. [File UI claims for those identities in Arizona, not California] | |
| GOMEZ: | I understand that. I know you already did it. | |
| BT: | First of all, I put all types of trust in you even with that AZ thing. That's a whole lot of dough. [The Arizona UI claims are worth a lot of money] | |

Later on September 8, 2020, GOMEZ inquired about an address on San Pedro Street, which is the address listed by inmate MC, who filed a claim with the Arizona PUA from GOMEZ's IP address and listed a mailing address on San Pedro Street in Los Angeles, California. Agents found the debit card for this claim in GOMEZ's purse:

| | |
|---|---|
| GOMEZ: | You know somebody that live on San Pedro [Street]? |
| BT: | Of course I know someone on San Pedro St.[5] |

---

[5] GOMEZ reference to a person who lives on San Pedro Street – the street listed for MC's claim – and BT's confirmation that he also knows that person, leads me to believe that GOMEZ knows that MC is a real person for purposes of Count 12.

7

| | | |
|---|---|---|
| GOMEZ: | That's good | |
| BT: | So what's going on? | |
| GOMEZ: | nothing else | |

BT then asks GOMEZ about identifying information for another UI claim which they did not want to discuss over the recorded phone call:

| | |
|---|---|
| BT: | I need you to be on top of something for me. I need you to do something. Take care of it with no problems. I need you to. You ready? |
| GOMEZ: | Yep |
| BT: | Remember when I told you when you were with your best friend that I had some stuff? [PII to use to file UI claims] |
| GOMEZ: | Yeah |
| BT: | Something for you. Should I just tap in with BM and have her just text everything to you? [Should I give you their PII or should you talk to "BM"] |
| GOMEZ: | Or you want me to just chat with her? [I do not want the PII over the phone] |
| BT: | Uh. I should have known man, I could just give it to you. What you think? |
| GOMEZ: | Talking with BM |
| BT: | That's was I thinking at first. |

On September 10, 2020 BT provided GOMEZ with additional identifying information for a UI claim by another CDCR inmate named DV:

| | |
|---|---|
| GOMEZ: | I'm waiting on something [UI payments]. |
| BT: | for Cali [for California] |
| GOMEZ: | Yes, I'm waiting on something |
| BT: | A lot of people in here think I'm trying to get over something on them. I'm like man, man nah that shit just. Ain't nothing work out for us. So it's bad, you feel me. It's crazy though. [Inmates think BT is not coming through with the UI money, because of claims getting denied] |
| GOMEZ: | I know. I'm so irritated behind it. I do know a way |

8

| | | |
|---|---|---|
| | | that could  probably work out on one more. [I know a way that can work,    if I file another UI claim] |
| BT: | | What if you had the info? [PII] |
| GOMEZ: | | yeah |
| BT: | | Just one [one person] |
| GOMEZ: | | I mean if it's more than one [more than one person's identifying information] |
| BT: | | you ready for this attorney [a person's identifying information] |
| GOMEZ: | | yeah, hold on |
| BT: | | Attorney info. Phone and info.  [SSN and Date of Birth] |
| GOMEZ: | | Yeah, what is it? |
| BT: | | It's [BT then spells out DV's full name]. and the phone number is. |
| GOMEZ: | | What B-X-X-X? |
| BT: | | Yeah V as in VXXXXXXXXX. |
| GOMEZ: | | B as in boy? |
| BT: | | V as in Victor. |
| GOMEZ: | | OK |
| BT: | | Middle initial X as in X. |
| GOMEZ: | | OK |
| BT: | | Alright, V as in Victor-X-X-X-X-X-X-X. Phone number is XXX-XX-XX06 [SSN] and the extension is XXX75 [Date  of Birth].[6] Do you want the private investigator info too? [Another person's identifying information] |
| GOMEZ: | | XXX75 [Date of Birth] |

---

[6] I have redacted the full names and all but the last digits in the social security numbers and dates of birth to avoid further publication of the PII. I affirm that each redaction concerns an actual name, social security number, and date of birth that are all assigned to the same person, according to agency records that I have reviewed.

9

| | | |
|---|---|---|
| BT: | Say it again. What's the extension? [What's the date of birth?] | |
| GOMEZ: | XXX75 [listing a specific month, day, and year] | |
| BT: | No. XXX75 [a different specific month, day, and year] | |
| GOMEZ: | Alright | |
| BT: | What's the phone number? | |
| GOMEZ: | XXX75 [SSN] | |
| BT: | Alright. Do you want that private investigation info too? CXXXXX. C-X-X-X-X-X-X-X-X-X. Middle initial X as in apple. W. W-X-X-X-X-X-X. His state BAR number is BXXXXX31. [SSN] The phone number is. You hear me? | |
| GOMEZ: | yeah | |
| BT: | You ready for the phone number? | |
| GOMEZ: | yeah | |
| BT: | XXXXXXX33 and the extension is XXXX77 | |
| GOMEZ: | I'm sorry. XXXX77. | |
| BT: | yeah | |
| GOMEZ: | Does the lawyer have a BAR? [driver's license number] | |
| BT: | No. He got a BAR, but it wasn't on the magazine, so I don't know. | |
| BT: | You still Gucci [making money] from what my neighbor telling me. You hear me. | |
| GOMEZ: | Yes | |
| BT: | With the attorney and PI, they want half on the front end. [When the UI claim is paid, they want half of it in the beginning.] | |
| GOMEZ: | OK | |
| BT: | And they basically said they don't give a fuck about the back end. [they do not want the rest of the money] | |

| | | |
|---|---|---|
| GOMEZ: | OK, got it. | |
| BT: | Are you gonna be smart about this? | |
| GOMEZ: | Yeah. I'll make sure I contact them and everything | |
| BT: | Alright. You gonna go to metro? | |
| GOMEZ: | Yeah | |
| BT: | Huh | |
| GOMEZ: | Yeah | |

Agents have confirmed that DV and CW are both inmates housed with BT. They are not lawyers nor investigators. The numbers that BT provided to GOMEZ are DV's and CW's actual social security numbers and dates of birth. Agents have not identified any UI claims using those identifiers. When GOMEZ tells BT that the claims are being process, agents believe she is either lying to BT, or submitted the claim in a different state that agents have not yet identified.

Ten days later, on September 20, 2020, BT asked GOMEZ about the status of CW's UI claim:

| | |
|---|---|
| BT: | What's up with the homie? What's up with Mr. W? |
| GOMEZ: | I know. I'm working on that right now. It's in the process. [CW's UI claim is being processed] |
| BT: | Um, they allow you to get your certifications? [Did the State approved the biweekly certifications on the UI claims] |
| GOMEZ: | I'm not sure yet. I already know what's going to happen with that, but we'll see. |
| BT: | And what's that? |
| GOMEZ: | It's just a little more info. [The state is asking for more information on this UI claim] |

Additionally, on September 11, 2020, GOMEZ and BT spoke about acquiring new PII for additional fraudulent UI claims. BT said, "it's gonna cost us a little bit of money to make it happen. But motherfucker, it could possibly get some socials and hit up Huntington Park. You feel me? [GOMEZ can purchase Social Security Numbers from a source in Huntington Park to use to file UI claims]. GOMEZ said, "Yeah. I think that it could happen too, but it's gonna, it's gonna cost at least a rack, you know. [It will cost at least $1,000 per SSN]. BT replied, "I was thinking, not a rack, like seven. [I think it will cost $700 per SSN, not $1,000]. GOMEZ corrected

11

him, "no, at least a rack because it's gonna be like 500 per claim." [at least $1,000 because it will cost $500 per UI claim]. GOMEZ went on, "I already talked to someone about it [buying PII], but the only thing is that it's still not a guarantee because of the fact that you know because you know of CA, because they run things. [California is checking UI claims and it's not a guarantee the UI claims will be approved]. GOMEZ also warned that, "CA could have, might have fucked it up for AZ you know so. [A claim that was filed in CA might get flagged, if the same PII is used to file a claim in AZ] I'm not gonna lie about that." BT showed his disappointment at that remark: "Shit."

I have also listened to calls placed by BT to GOMEZ on August 18, 2020 and August 19, 2020, where they discussed sending and receiving money through "Cash App." Cash App is a mobile based application for transferring cash between users without going through traditional banks.

I have also listened to a call between GOMEZ and WB in which WB identifies himself by name and chats with GOMEZ for a short time. Based on this call, I believe GOMEZ knows that WB is a real person for purposes of meeting that element of Count 10.

### D. Evidence found at GOMEZ's residence connects her to fraudulent UI claims.

On November 17, 2020, I and other agents executed a federal search warrant at GOMEZ's residence. I was either present when the following items were found or the item was called to my attention by another agent who found the item. I encountered GOMEZ at the residence, along with a relative. Her relative is elderly and has memory issues such that, in my opinion, he cannot care for himself and would be incapable of executing a fraudulent scheme of this scope.

Among the paperwork found in GOMEZ's bedroom, in her purse, in her bed, among many other items such as her identification cards, employer ID cards, and correspondence, demonstrating her dominion and control of the area, agents found the following physical evidence linking GOMEZ to this scheme:

- A visa debit card issued to BT and believe to be the proceeds of BT's UI claim filed on June 8, 2020.[7]
- EDD forms for BT's UI claim filed on June 8, 2020.
- EDD forms for WB's UI claim filed on June 16, 2020.
- An EDD "REQUEST FOR ADDITIONAL INFORMATION" relating

---

[7] Agents have confirmed that BT's name is on the debit card, but have not yet affirmatively linked the card to a specific UI claim.

12

to Florida Resident BW's UI claim filed on August 31, 2020.
- Full PII for Florida Resident RA.
- A Visa Debit card issued to MC for his Arizona UI claim filed on July 1, 2020, and sent to the South San Pedro address discussed above.
- A Visa Debit card issued to BT2 for his UI claim filed on July 2, 2020, and sent to the 88th Street address discussed above.

### E. Bank records showing withdrawals from the MC and BT2 debit cards and corresponding deposits to GOMEZ's personal bank account.

As discussed above, on recorded jail calls BT provided GOMEZ with PII from two inmates, MC and BT2, who resided on San Pedro St. and 88th Street respectively. Agents found two debit cards at GOMEZ's residence issued to MC and BT2 as payment for UI claims made to the Arizona UI administrator, AZDES. Bank records show cash withdrawals totaling $3,600 from each of those cards (for a total of $7,200 from both cards) at a grocery store a few blocks from GOMEZ's residence. On at least one instance, bank surveillance video shows GOMEZ withdrawing money from the card issued to BT2. In the video, I can see enough of GOMEZ's face (she is wearing a coronavirus face mask) to recognize her, and I can see BT2's name on the card and several digits from the account number that matches the UI account issued under BT2's name.

Below is a screen capture from a drive-through ATM video taken on July 20, 2020. I can recognize GOMEZ in the video. On this day GOMEZ withdrew $500 on a debit card issued to BT2.



Below is a screen-capture from a walk-up ATM video taken on July 23, 2020. I can recognize GOMEZ in this video. On this day GOMEZ withdrew $1,000 from a debit card issued to MC.



Below is a screen capture form a drive-through ATM video taken on August 13, 2020. On this day GOMEZ withdrew $300 from a debit card issued to MC.



BT2 and MC also submitted claims to the California UI administrator, EDD, for the same time period. I have reviewed bank records showing ATM withdrawals on these two cards made at approximately the same time, in the same or nearby locations, indicating coordination between withdrawals from those two cards.

Bank records also show a pattern of cash deposits to GOMEZ's own bank account that show a correspondence between withdrawals from the debit cards and deposits to GOMEZ's account.

There is probable cause to believe that GOMEZ is the person who submitted the claims set forth in Counts 1-9 because, among other things:

- Each of the claims was either submitted to the relevant state agency using GOMEZ's IP address, or used GOMEZ's residence as the claimant's residence, or both.
- GOMEZ sent money to some of the inmates who submitted the claims.
- GOMEZ discussed the scheme with BT on recorded calls.
- GOMEZ possessed the debit cards issued for two claimants: BT2 and MC, surveillance video records her using those cards, and bank records show near-contemporaneous deposits into GOMEZ's own bank account following certain withdrawals on those cards.

Based on this evidence, I submit that there is also probable cause to believe that GOMEZ devised a scheme to defraud the EDD and AZDEZ of money intended for legitimate PUA UI claims. In submitting these claims, GOMEZ represented that each of these claimants was someone other than herself and that the claimants were eligible to work and were left unemployed by the COVID-19 pandemic. None of that is true. Each of these claims were submitted by GOMEZ herself, passing herself off as a different person. And the named claimants were not left unemployed by the COVID-19 pandemic, they were unemployed because they were inmates in a prison and were not legally allowed to work or collect UI, or in the case of the out-of-state residents – RA, KN, and BW – they were never employed in California. Those representations regarding the identity of the claimant, the reason for unemployment and residency in California were material because the state administrators of the UI PUA programs require that each of those things be true in order to submit a UI PUA claim.

As to Counts 10, 11, and 12, based on GOMEZ' submission of these identities to the EDD and/or AZDEZ, and her collection of benefits from those claims, and her knowledge that each of those claimants is a real person (as set forth above), I believe that GOMEZ has violated every element of the offense charged in those counts.

15